we're going to move to the next case which is Fuqua v. Turner Okay, looks like we have everybody. Mr. Martin, you're going to want to unmute yourself. Thank you. We're going to hear from you first. Please record. Good morning. Good morning. I haven't been selected to discuss the issue of the process of service on this matter. We know that the burden of proof is on the plaintiff to prove that he has fully complied with the rule four of the federal rules of civil procedure. Plaintiff Fuqua submits to the court that he has done such. When the issue of service come up. It was only after plaintiff Fuqua had filed application for default judgment. The U.S. attorney, Mr. Towns, also at the time filed almost on the same day a motion in opposition and a motion for extension of time because some kind of way, a transition between our process of receiving green cards and thinking that everyone had signed and received them properly. Until our default judgment after 60 days, no one had responded. So that's why we were under the impression that everything had been complied with. Further, I bring this to the court's attention that document number 13, which is the plaintiff's motion to stay, highlights the fact that we had received those green cards from these ATF federal agents. They had been properly served November the 15th. That document went out and possibly was served to everyone through the electronic court filing. However, so this was served on someone in the mail room. Your Honor, the documents were signed. I don't know. It's your burden, right, as you said at the beginning of your argument, to establish proper service. I don't see where in the record there's anything to establish that whoever signed was an agent for these individuals. And that's the question, Your Honor, as to why on our document 27 we asked for an evidentiary hearing to prove all those matters. The court didn't see my copy of the service return. What you found was a copy where no signature was visible to the court and we've looked at it. I can't see a signature there. Did you have the original? I have the original, Your Honor. Why didn't you file it? We asked for evidentiary. Nothing would have prevented you from filing it. Well, I was reluctant because I didn't want to get out of my possession since you had come up with the question that it had been maybe falsely signed or something like that. Well, it's not. I mean, I don't know how you could claim it was falsely signed if you don't see anything on it. I mean, the court sees nothing, right? I didn't hear. I'm sorry. The copy you filed has no apparent signature. Correct. I guess you're saying that the original, which none of us have ever seen in the district court, didn't see would show something else. Yes, sir. But but but but you didn't file it. I asked for a hearing and it was denied. So that's OK. OK. OK, I think we understand. Are there any questions? Other questions? OK, Mr. Sawyer. Good morning, Your Honor's David Sawyer. I represent the plaintiff and there are a number of issues that can be raised with regard to the attempt to serve these federal defendants. Initially. As Mr. Martin has stated, he filed a motion for default judgment, asking for the court to enter such and also filed a request that he be able to present these original documents to the court. Once the court entered a default or denied the default judgment, Mr. Martin even asked for a motion to reconsider that issue. That's that issue is not before us. Right. Right. I'm just bringing up the fact that these issues came up to the court on three separate occasions at which the court could have asked for a hearing to determine one, whether these cards had been signed to who and who was the agent of these defendants. And was that the person who signed the cards in the mailroom? Isn't your burden to establish that that person is the agent rather than the government's burden to establish that that person was not the agent? That's the burden is to show proof of service. But I think once it's signed, I think the government would have the obligation to at least present to the court that this person was not the agent. I don't see how Mr. Martin could determine who the defendant's agents were for receiving service. It was mailed to their proper address and signed by an individual. You could take the deposition of whoever signed it. Well, dismiss the case. I don't I guess that could have been allowed. But when the court dismissed the action. But before the court did so, I mean, if there was a question about whether that individual was the agent, you say the government was obliged to show that it wasn't. And you couldn't be put to the position of establishing that it was the agent. I'm wondering why that's so. Why couldn't you ask for an opportunity to conduct jurisdictional discovery to establish that this person who signed it, in fact, is the agent? That could have occurred, but I think it could have occurred also with the court simply ordering a hearing, having the defense provide that information to the court. Another issue that comes up with the service issue is that the fact that the court denied the motion for default and then granted the motion to dismiss knew full well that this was going to prevent Mr. Martin from refiling this action because the statute of limitations had run. The judge had obligations to at least allow Mr. Mr. Martin to correct service. He also could have taken into concept the issue that that constructive service had been accomplished by the fact that the government's attorneys had appeared and filed their own motions. Your precedents allow for that kind of constructive service, though, to succeed. I'm sorry. Do our precedents allow for that kind of constructive service argument. Oh, yes, there are. There are a number of cases in which constructive service has been recognized by the court. This court and a district court where the individual has either appeared or filed a motion, and it's a discretion of the judge to determine whether service should be accepted as constructive service. And that occurs when the attorney appears and ask for other than service. Again, I think the court had a burden when it knew that the statute of limitations was about or had run because he Mr. Martin filed this the day before the statute of limitations would have occurred. OK, Mr. Sawyer, you've saved some time for rebuttal. Let's hear from this. May it please the court. Elizabeth Holt for ATF agents, Brett Turner and Adam. Mr. Sawyer, you're supposed to have at least eight minutes. That was our agreement there. And it started at three after my three. Mr. Martin, each of you. Each of you had eight minutes, four minutes and opening and each of you have three minutes of rebuttal, I believe. Yeah, that's fine, sir. That's what my minute sheet show. Mr. Sawyer, that was your understanding as well. I understood I had that significant time that Mr. Martin stated, but I don't mind speaking after the after the defense has spoken. OK. OK. I'll do it whatever way you want. So, as I understood it, each of you had four minutes of opening and three minutes of rebuttal a piece. Is that not the way you want to do it, Mr. Martin? No, sir. How do you want to do it? Well, yeah, I'm saying what we had. I understand. And I had four minutes and then three minutes rebuttal. Mr. Sawyer had a full eight minutes. That was our 15 minutes that we were going to. I see. Mr. Sawyer, you want to take a few more minutes? I'll speak to the issue of the court's taking of judicial notice and the fact that Mr. Collier. That makes sense. I mean, so you need to be given four more minutes instead of eight minutes. Deputy. Yeah. OK, go ahead, Mr. Sawyer. Thank you, sir. Regardless of the federal defendants, the state defendant, Mr. Collier, filed a motion for summary judgment and offered testimony from a prior criminal case in which the court took judicial notice. And I think that that issue was a judicial decision that can be challenged at any time, especially here on appeal. It's not an evidentiary issue. It's not a motion in limine that may be filed before trial or a case where evidence is an issue at trial. It's a judicial decision made by the court to take judicial notice. And the law is fairly clear that he cannot do that when it's testimony. I didn't read that to be what the district court did. I read the district court to consider sworn testimony from another proceeding, but not to have taken judicial notice of of any facts or conclusions that were made by another court. Well, it was exactly what was presented to the court, sir. It was the sworn testimony from another court. It was presented as evidence to the to this court. But I mean, courts can consider that on summary judgment motions, can't they? No, sir. Why? I mean, they can consider affidavits and declarations. That may have been offered in this case. But they cannot accept sworn testimony for the truth of testimony offered in a separate case. What's your best authority for that? Well, I've plotted a number of 11th Circuit cases and the Northern District of Alabama, which is stated. I think Judge Boudry accepted that argument, saying that she could not. She could understand that that testimony was provided in another court, but she could not accept that testimony as the truth for considering the facts in her case. On summary judgment? On summary judgment. For creating a genuine issue of material fact? Correct. The burden is on the defendant when they file their motion to present substantial evidence. And they presented a sworn testimony from a different case as their only evidence. And that is not allowed. Because the court cannot accept that information. I mean, are you saying the court can't do that because it's hearsay? No, they can't do it because the testimony has to be presented in their case by a declaration or sworn statement. It can't be something that's sworn to. I've seen many cases where courts present, where litigants present testimony from other cases as an evidentiary submission on summary judgment. Well, that's not allowed by statute or by law. And consider that maybe for conflicting evidence or to rebut or refute what's stated in the present case. Are you saying there's a higher evidentiary burden on the movement for summary judgment than there is on the party opposing it? Yes, sir. That the opposing party could rely on that testimony from another case, but the party moving for summary judgment cannot? I'm saying that no party can, sir. And I think that the fact that no evidence was presented by the defendant... Okay, that's news to me. Are you familiar with the Nippon Credit Bank decision from this court? I am not. Okay. But I've cited a number of cases where the court has said judicial notice has been recognized for a period of time and it says the court cannot accept as true any testimony presented in another case, in their case. Okay, Ms. Holt. May it please the court, Elizabeth Holt for Agents Brett Turner and Adam Nesbitt. The district court properly dismissed all claims against Turner and Nesbitt for insufficient service of process. Service of process is a jurisdictional requirement. Both the district court and the government put Fuqua on notice that he had not perfected service. Fuqua failed to remedy the defects in service, and therefore the district court properly dismissed all claims against the two agents. Specifically, the government does not see where Fuqua asked for an evidentiary hearing. Fuqua appears to be referring to document 27, where he stated that the plaintiff is more than willing to make the documents available for this court's inspection. I believe referring to the Attorney General's, the card to the Attorney General. However, nowhere in the record does Fuqua actually ask for an evidentiary hearing or take any of the steps or any other steps, or any of the steps, excuse me, that Your Honor suggested, for example, as to bring the card, the actual card to the court's attention. Second, briefly, the burden is always on the plaintiff, regardless of the statute of limitations. But here, well before the district court dismissed the claims, the district court gave notice on several occasions, as did the government, that there were inconsistencies in service and pointed out these specific inconsistencies that are on appeal. And because of that, there's simply no reason to go to a suggestion of whether there's good cause to extend, to further extend the time to refile, not refile, but to attempt to reserve these individuals. The plaintiff had every opportunity. For whatever reason, the plaintiff did not reserve the Attorney General and did not properly serve the two agents. And for that reason, the court did properly dismiss the case against them. Can you tell me the docket number of when you requested, when you noted lack of personal jurisdiction over the official capacity claims? Your Honor, yes, in document 25 was the government's motion for an extension of time. And what that did state was that the deadline may not have begun to run because of imperfect service of process on defendants Turner and Nesbitt. So it did not identify individual or official. And then it also stated that the interest of the United States may be implicated also if there was an entry of default judgment. And then, Your Honor, the government's motion to dismiss did focus more on the individual capacity claims. That wrapped up in the individual capacity claims, of course, is whether or not... Did you not forfeit then any issue about jurisdiction for the official capacity claims? Your Honor, no, because in that initial motion document 25, the government did state that there was imperfect service of process on the defendants, Turner and Nesbitt. And so whether it would be an individual or official capacity and also further mentioned that there could be... The quote is the individual capacity claims are barred due to insufficient service of process. Your Honor, I apologize. Are you looking in document 25? I'm looking at the record 40 colon 7 through 8 and at page 12. Yes, Your Honor. In document 40, the government does focus on the individual capacity claims. That is correct. Is there anywhere where the government said that service was insufficient for the official capacity claim? Your Honor, the government did not make that precise statement. And you've made that objection, haven't you? I mean, isn't that a forfeited objection? Your Honor, given how the government raised it in the motion for extension of time, it would be the government's position that we did not. However, in looking at the case itself and document 48, Judge Kahlon's order with respect to this case, in truth, there are no actual official capacity claims while the defendant... That's a merits question. Your Honor, that is correct. So if this court were to believe that somehow the government did waive the official capacity issue, then it would remand to the district court for the determination of any... I mean, I look at this record, Ms. Holt, and do we have to do that? I mean, insofar as the plaintiff is asserting that it's under 1983, we can't sue a federal official under Section 1983. And insofar as it's... I mean, it can't be a Bivens claim, can it? Correct, Your Honor. That's why the government was stating that, in truth, there are simply no official capacity claims. And they fail as a matter of law. Wouldn't that be the way to deal with it? I think, Your Honor, the cleanest way would be for the court, even if there was a question of service in the official capacity, for the court then to look at the briefing on the qualified immunity. And it's clear that there are no official capacity claims, and therefore to just simply affirm the district court's dismissal of all claims against Turner and Nesbitt. Is it possible that the plaintiff waived your waiver by not raising this issue on appeal, since it does appear that the district court decision, in spite of perhaps a lack of emotion to dismiss the official capacity claims, did so on the basis of insufficient service? Now we're getting to the secret fund, but... Your Honor, I think the cleanest way to think that is that the government did initially raise concerns about the service on Turner and Nesbitt, period. That would include an individual and official capacity. The district court, in looking at all the documents, went to and addressed both the issues of individual and official capacity. However, I do think that you are correct. There certainly are some issues with how Fuqua appealed this case and did not certainly raise any issue with the official capacity claim. And in the opening brief, did not even raise or did not even argue that the district court's decision that the attorney generals had not signed the card, did not object to that in his opening brief. And the attorney general's card is required for both individual and official service of capacity. So for these reasons, the government does ask the court to affirm that decision below. Thank you, Your Honor. Thank you, Ms. Hall. Mr. LaCour, General LaCour. Mr. Chief Judge, and may it please the court, Edwin LaCour, on behalf of Defendant Jimmy Collier. Mr. Fuqua alleged that Deputy Fire Marshal Collier violated his clearly established rights. But Fuqua has submitted no competent evidence to back up that claim and has cited to no case that would have put Collier on notice that his November 16, 2015 fire code inspection was unconstitutional. The district court thus properly granted summary judgment to Collier, and this court should affirm. Unless the court prefers otherwise, I'll first address Mr. Fuqua's judicial notice argument and then briefly turn to the merits. So, Judge Pryor, as you were noting, the district court was not taking judicial notice of these certified transcripts. Just like a deposition or an affidavit or a declaration, this is sworn testimony that was given to a court. Transcripts were certified, and for that reason, this is no different from relying on otherwise competent evidence that Rule 56 expressly lays out. Multiple courts of appeals have held that certified transcripts from other judicial proceedings are competent evidence that can support the motion for summary judgment. And there's at least one unpublished decision of this court which has said the same. Now, this case was not cited in our brief, so I'll provide the citation. That's Jordan v. Conway, 441 Federal Appendix 761. That's a 2011 decision in which this court said that the district court actually erred in declining to consider certified transcripts from other proceedings. There's no argument in this case that the transcript of the testimony was not authentic, as I understand it. Correct, Your Honor. There's no argument that the transcript... It's essentially the same thing as an affidavit. Absolutely, and there's no reason... More than an affidavit because it was under oath and cross-examined. Precisely, Your Honor. And there's no reason to force Mr. Collier or Mr. Williamson to reduce that testimony that they already gave in front of a federal court, put it into an affidavit or declaration, and resubmit it. It was competent evidence that every court of appeals case that I found has said that... You cited us the first circuit case. I found a D.C. circuit case that both support that proposition. That's correct, Your Honor. And as I mentioned, the 11th Circuit in an unpublished 2011 decision... You know how I feel about unpublished opinions. Fair enough, Your Honor. Well, this would be a great opportunity to publish an opinion, making clear to district courts that this is the sort of evidence that can be considered to support a motion for summary judgment. And my friend, Mr. Sawyer, noted a Judge Boudry decision in which she declined to take judicial notice of testimony. That was a case that was on a motion to dismiss posture. I believe he's referring to the Howby City of Enterprise case that cited in their opening brief. The defendant there... I believe the defendant was moving to dismiss and asked the court to take judicial notice of testimony that had been provided in a different proceeding. Because they were at the pleading stage rather than the summary judgment stage, Judge Boudry declined to take judicial notice. So it wasn't a summary judgment? No, it was not, Your Honor. So, for those reasons, the only competent evidence in the record was the testimony of Mr. Fook... not of Mr. Fook, I apologize, of Mr. Collier and of Sheriff Williamson. And I believe that that evidence also shows that there was no violation of any clearly established right here. So, if we look at the evidence, we see that Collier's search in November followed along after a September and October search that were initiated after Sheriff Williamson lodged a complaint with Deputy Fire Marshal about a crowded and unlicensed nightclub known as The Pick. Now, the record, again, this is unrebutted, is that such complaints would normally trigger an inspection. Thus, Collier agreed to inspect. When he arrived in September, he walked into the unlicensed nightclub, asked where the owner was, spoke with Mr. Fook, who, again, unrebutted evidence is that he was agreeable, polite, and accompanied Mr. Collier on his inspection of The Pick, where he found numerous fire code violations. Thus, as was his custom, he went back in October, October 21st, to be exact. Now, what's notable, there were no law enforcement officers there for this October follow-up re-inspection. Mr. Fook, while he was not present initially at The Pick, so Mr. Collier called him on the phone, Mr. Fook, while of his own accord, drove to The Pick, opened the door, accompanied him on the inspection. There were still some fire code violations that had not been redressed, and so there was a follow-up inspection again on November 16th, and that is the only search or inspection that is at issue here. And it went much like the October inspection. Mr. Collier showed up by himself, not with law enforcement officers present, but by himself. Mr. Fook, while he was not present, Collier called Fook, arrived, opened the door, let him in, accompanied him on the inspection. Now, there is no case law that has been cited by Mr. Fook, none that I could find, that would put Deputy Collier on notice of that November re-inspection of an unlicensed nightclub with multiple fire code violations, where the owner came from off-site precisely to open the door and let him in and accompany him on the search, was a violation of Mr. Fook's constitutional rights. No case has been cited to us. Now, on page 23 of Mr. Fook's brief, he states that there was no consent to this search. He was merely, quote, acquiescing to the show of force by the large number of officers present, close quote. That's just a statement of fact that is unsupported by any evidence in the record. It's uncontroverted that Collier was there by himself on that day, on November 16th. It was just him, so Fook's acquiescence argument fails. For all these reasons, we believe the district court properly granted summary judgment in this case, and this court should affirm. Mr. Okor, I don't think this is going to move the needle because Mr. Fook hasn't made this argument, but is it ordinary, you would say, for the ATF and other law enforcement organizations to have a meeting with the fire marshal before a fire inspection? There is evidence in the record that Mr. Collier had attended at least one other joint meeting like this in the past. I don't know whether that would qualify the meeting as ordinary. However, the evidence is unrebutted that while Collier was present, he made clear to them that he already had scheduled this November 16th follow-up inspection. This was not something that he was put up to do by other law enforcement officers. He simply noted it. That's when the ATF agent allegedly said, well, if you see the gun, let us know. Then he proceeded to conduct the fire inspection that he was already planning to conduct. Presumably, there's some sort of line where an administrative inspector could become an agent of law enforcement. I'm not suggesting that's what happened in this case, but in a different case, what do you think the line is? If the inspection is already pre-planned and then law enforcement asks for information, is that always okay, or is there a different line? I think if this was a normal inspection that was going to be planned and law enforcement simply noted that this is a felon and if you see a gun present, let us know. I don't see any problem with that and certainly isn't any clearly established law cited in the briefs in this case. Would it have to be a situation where the officer conducting the administrative search at least would show that he didn't do anything different from how he would have ordinarily conducted the administrative search? I think that's certainly a relevant factor, Judge Pryor, and we have that evidence here in the record that Mr. Collier stated that he did not go outside of the scope of a normal fire inspection to conduct any... Correct, that would certainly be a more difficult case, but of course there's no such evidence here. The only evidence comes from Mr. Collier and from Sheriff Williamson. Judge Grant, did you have any other questions? All set, thanks. Okay. Mr. Martin, you've saved a few minutes for rebuttal. Thank you, Mr. Martin, for bringing to our attention the division earlier and I was happy to rectify and apologize for that misunderstanding. No problem, Your Honor. We've gotten through it, but in our brief, we did make a distinction about Mr. Collier going into Mr. Fuqua's bedroom for a fire inspection. Now that was in his residence, and we made that distinction in our brief there as to what his alleged administrative guidelines were, and he did, Judge, go beyond that scope. He searched everywhere for an alleged fire inspection. He had been there several times, and he didn't have a search warrant. Weren't there materials that he ultimately found that were dangerous from a fire perspective? If your bedroom is attached to a club or other facility, then doesn't that open it up to that type of inspection in a different way? It's not as if they showed up to his house five miles away to search for a fire inspection. He was forced to open his bedroom in the inspection there, and that's, from the plaintiff's perspective, that went beyond the administrative scope. And the bottom line is what Mr. Collier found was suppressed because he had violated the alleged search warrant. The problem I have, Mr. Martin, is it appears that there may have been testimony or evidence before, I guess it was Judge Putnam, that we don't have here. Insofar as I understand it, Judge Putnam, relying on the show of force, we don't really have any evidence to rebut what Collier says happened here. Your Honor, and that's why Mr. Sawyer made those legal discussions that he submitted the transcript from then, and we didn't want to make anything illegal that would not be offered into evidence. Yeah, but on summary judgment, you can rely on affidavits, declarations, other materials that create a genuine issue of material fact, even if that would be hearsay and not admissible at trial. Our research showed something different, Your Honor. We'd ask that you deny the granting of the summary judgment. We'd also ask that the court allow us to have an evidentiary hearing to clear up the matter about what service was proper if we confounded with it. Okay, thank you, Mr. Martin. I think we understand your case. We're going to move to the next one.